UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| JULIE MICHELLE McMILLEN,<br>　　　　　　　　Plaintiff,<br>　　　v.<br><br>ANDREW M. SAUL,[1] Commissioner of<br>　Social Security,<br>　　　　　　　　Defendant. | **DECISION**<br>**and**<br>**ORDER**<br><br>**18-CV-01238F**<br>(**consent**) |

_____

APPEARANCES:　　　　　LAW OFFICES OF KENNETH R. HILLER, PLLC
　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　KENNETH R. HILLER, and
　　　　　　　　　　　　JUSTINE DAVID JONES, of Counsel
　　　　　　　　　　　　6000 North Bailey Avenue
　　　　　　　　　　　　Suite 1A
　　　　　　　　　　　　Amherst, New York  14226

　　　　　　　　　　　　JAMES P. KENNEDY
　　　　　　　　　　　　UNITED STATES ATTORNEY
　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　Federal Centre
　　　　　　　　　　　　138 Delaware Avenue
　　　　　　　　　　　　Buffalo, New York  14202
　　　　　　　　　　　　　　　　and
　　　　　　　　　　　　KRISTIN M. ROGERS
　　　　　　　　　　　　Special Assistant United States Attorney, of Counsel
　　　　　　　　　　　　United States Attorney's Office
　　　　　　　　　　　　c/o Social Security Administration
　　　　　　　　　　　　Office of General Counsel
　　　　　　　　　　　　61 Forsyth Street, S.W.
　　　　　　　　　　　　Suite 20T45
　　　　　　　　　　　　Atlanta, Georgia  30303

## JURISDICTION

　　　On October 7, 2019, the parties to this action, in accordance with a Standing

Order, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

(Dkt. 14). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on June 27, 2019 (Dkt. 9),[2] and by Defendant on August 26, 2019 (Dkt. 10).

## **BACKGROUND**

Plaintiff Julie Michelle McMillen ("Plaintiff" or "McMillen"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application for social security disability benefits filed with the Social Security Administration ("SSA"), on April 9, 2015, for Title II Disability Insurance benefits ("disability benefits"). AR[3] 167-68. In applying for disability benefits, Plaintiff alleges she became disabled on September 24, 2014, based on a missing L5-S1 disc that was replaced on March 3, 2015, depression, anxiety, and panic attacks. AR at 181, 185. Plaintiff's application initially was denied May 13, 2015, AR at 73-79, 82-87, and on May 18, 2015, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"), AR at 88-89, which was held May 12, 2017, before ALJ Elizabeth Ebner in Falls Church, Virginia, with Plaintiff, represented by Dennis Gaughn, Esq., appearing and testifying via videoconference in Buffalo, New York. (R. 42-72). Vocational expert Sharon Ringenberg ("the V.E.") gave testimony by telephone. *Id.*

---

[2] Although the Docket indicates Plaintiff filed another motion for judgment on the pleadings on June 27, 2019 (Dkt. 8), a plain reading of that document establishes it is not a motion but, rather, a letter to the court advising that Justin Jones, Esq., is appearing in this case as Plaintiff's counsel.
[3] References to "AR" are to pages of the Administrative Record electronically filed by Defendant on April 29, 2019 (Dkt. 7).

2

On July 26, 2017, the ALJ issued a decision denying Plaintiff's claim, AR at 13-29, which Plaintiff appealed to the Appeals Council. AR at 8-9. On September 13, 2018, the Appeals Council denied the request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-7. On November 7, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's July 26, 2017 decision.

On June 27, 2019, Plaintiff filed a motion for judgment on the pleadings (Dkt. 9) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum"). On August 26, 2019, Defendant filed a motion for judgment on the pleadings (Dkt. 10) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Civil Rule 5.5 (Dkt. 10-1) ("Defendant's Memorandum"). On September 13, 2019, Plaintiff filed Plaintiff's Reply to Defendant's Brief in Support of the Defendant's Motion for Judgment on the Pleadings (Dkt. 11) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED. The Clerk of Court is directed to close the file.

## **FACTS**[4]

Plaintiff Julie Michelle McMillen ("Plaintiff" or "McMillen"), born June 7, 1977, was 39 years old as of the May 12, 2017 administrative hearing. AR at 167. Plaintiff lives

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for judgment on the pleadings.

3

with her husband and has three minor children who are in the legal custody of Plaintiff's mother, and with whom Plaintiff has supervised visits once a week. AR at 46-47. Plaintiff is a high school graduate having attended regular classes, and completed vocational training in phlebotomy. AR at 186. Although Plaintiff obtained a driver's license, she let it expire because her medications render her unable to sufficiently concentrate on the road. AR at 55. At age 16, Plaintiff injured her left knee in a snowboarding accident and now has arthritis in the knee. AR at 316. Plaintiff has past relevant work experience as a certified nurse assistant ("CNA"), housekeeper at a hotel, machinist in a manufacturing facility, and a teacher's aide at a daycare. AR at 186. Plaintiff's primary health care provider is Lakeshore Primary Care Associates, LLP ("Lakeshore Primary"). AR at 315-87.

In 2009, Plaintiff sustained a severely damaged L5-S1 disc attributed to an incident of domestic abuse by her former boyfriend and father of her two youngest children. AR at 54-55. Plaintiff's disability benefits claim has been primarily based on this back injury.

Plaintiff was most recently employed on September 24, 2014 as a machinist. AR at 50, 185. Plaintiff alleges she stopped working on the advice of her doctor, and was pursuing a worker's compensation claim because of an injury to her left knee.[5] AR at 54. *See* AR at 373 (note from Lakeshore Primary physician assistant Michelle G. Warner ("P.A. Warner"), dated September 29, 2014, excusing Plaintiff from working from September 2, 2014, through November 10, 2014, because of back pain).

---

[5] Plaintiff did not include her left knee injury in her claimed medical conditions listed in her disability benefits application. *See* AR at 185 (listing medical conditions on which Plaintiff bases her disability benefits claim).

On November 5, 2014, Plaintiff commenced treatment with James G. Egnatchik, M.D. ("Dr. Egnatchik"), a neurosurgeon, for her chronic low back pain. AR at 396. A November 14, 2014 MRI of Plaintiff's lumbar spine, ordered by Dr. Egnatchik, "revealed a significantly degenerative disk at L5-S1 with a left paracentral disc herniation." AR at 393-94, 400.

On December 12, 2014, Plaintiff commenced pain management treatment with Paul T. Biddle, M.D. ("Dr. Biddle"), an anesthesiologist and pain management specialist, who prescribed narcotic pain medication for which routine laboratory drug screening showed Plaintiff in compliance with the treatment protocol. AR at 417-31.

On March 3, 2015, Dr. Egnatchik performed a laminectomy, *i.e.*, surgical replacement of Plaintiff's damaged L5-S1 disc. AR at 54, 411-13. At a follow-up appointment on April 1, 2015, Plaintiff was described as "doing quite well" and "slowly increasing her activities," but continued to have pain in her low back radiating into her legs. AR at 389. At an April 6, 2015 appointment with Dr. Biddle, Plaintiff reported she was able to manage her pain with medication, which sometimes made her groggy, but Plaintiff did not then want to make any changes to her pain management protocol. AR at 417-19.

On May 12, 2015, Plaintiff fell down some stairs resulting in significant pain in her low back that radiated into her legs. AR at 462. Following the fall, Plaintiff sought medical help from South Buffalo Mercy Emergency Room where a CT scan of Plaintiff's back showed no significant hardware failure or fractures, and an MRI showed a far lateral disc herniation at L3-L4 of the left side, with L4-L5 unchanged and nothing in the

5

MRI showed anything more than trauma that was expected to gradually subside and for which no surgery was recommended. AR at 462-64.[6]

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 month." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine

---

[6] In September 2016, Plaintiff fell down a flight of stairs and re-injured her back. AR at 435-36. Because this happened after the date Plaintiff was last insured for purposes of disability benefits, the court does not further consider the effects of this incident on Plaintiff's instant claim.

whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[7] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.    Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, the inquiry ceases and the claimant is not eligible for disability benefits. *Id*. Next to be determined is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent such an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[8] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.
[8] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity," which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). [9] 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement through June 30, 2015, AR at 18, Plaintiff did not engage in substantial gainful activity since September 24, 2014, her alleged disability onset date, through June 30, 2015, Plaintiff's date last insured, *id.* at 18, Plaintiff suffers from the severe

---

[9] "Past relevant work" or "PRW" is defined as work the claimant performed within the past 15 years as substantial gainful activity, for a sufficient period of time for the claimant to learn how to perform the work. 20 C.F.R. §§ 404.1560(b)(1), 404.1565, and 416.960(b). Whether past work qualifies as relevant is determined either as the claimant actually performed it, or as the work generally is performed in the national economy. *Id.*

impairments of status post laminectomy and lumbar spine fusion, post laminectomy syndrome, status post left knee injury, and chronic low back pain, *id.*, at 18-19, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1. *Id.* at 19-20. The ALJ also found that Plaintiff retains the residual functional capacity to perform sedentary work as defined under 20 C.F.R. § 404.1567(a), with additional limitations of being able to frequently operate foot and hand controls, reach overhead in all directions, and handle, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, and crouch, never kneel or crawl, never work at unprotected heights, no exposure to dangerous moving mechanical parts, only occasional exposure to vibration, complete only simple routine tasks, was expected to be off-task five percent of a regular workday for rest breaks, and required use of a cane to walk short distances. *Id.* at 20-23. Based on these limitations, the ALJ determined Plaintiff could not perform her past relevant work as a machinist, certified nurse aide and housekeeper, *id.* at 23-24, but based on her RFC, age, education, and ability to communicate in English, could perform work as an addresser, mail clerk, and eye glass polisher as those jobs are classified in the Dictionary of Occupational Titles. *Id.* at 24-25. Accordingly, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 25.

In support of judgment on the pleadings, Plaintiff argues the ALJ, in determining Plaintiff's RFC, did not rely on any medical opinions but, instead, relied on raw medical data and failed to develop the record such that the RFC determination is not supported by substantial evidence, Plaintiff's Memorandum at 15-21, and the ALJ ignored two

9

opinions from Dr. Egnatchik, the neurosurgeon who performed Plaintiff's laminectomy, who indicated Plaintiff was temporarily disabled and whom the ALJ should have recontacted for a complete opinion about Plaintiff's functional abilities. *Id.* at 21-22. Defendant argues the ALJ properly evaluated Plaintiff's RFC which did not require further developing the record, Defendant's Memorandum at 6-9, nor was the ALJ required to recontact Dr. Egnatchik. *Id.* at 9-10. In reply, Plaintiff reiterates the ALJ rejected all medical opinions and improperly relied on raw evidence, Plaintiff's Reply at 1-4, and should have recontacted Dr. Egnatchik. *Id.* at 4-5. Because no challenge is raised to the first, second, third and fifth steps of the five-part analysis, the court does not address them, but limits its review to only the fourth step, *i.e.*, whether the ALJ's determination that Plaintiff retains the residual functional capacity for a limited range of sedentary work that exists in the national economy is supported by substantial evidence in the record.

As stated, at the Fourth Step of the five-step analysis, the ALJ considers the applicant's "residual functional capacity," *i.e.*, the ability to perform physical or mental work activities on a sustained basis despite limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any PRW. 20 C.F.R. §§ 404.1520(e) and 416.920(e). Disability benefits will be denied at the fourth step if the applicant remains capable of performing PRW, *id.*, as well as at the fifth step if, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§

404.1560(c) and 416.960(c).  In the instant case, the ALJ found Plaintiff, despite her impairments, remained capable of a limited range of sedentary work which, according to the relevant regulation,

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  Insofar as Plaintiff maintains the ALJ erred in rejecting medical opinions in the record regarding Plaintiff's functional or work capacity limitations and relying only on raw medical evidence which is insufficient to support the ALJ's RFC assessment, Plaintiff's Memorandum at 15-18; Plaintiff's Reply at 1-4, a plain reading of the record establishes substantial evidence supports the ALJ's decision.

In particular, where the record contains sufficient evidence to permit the ALJ to render a common-sense RFC determination the ALJ is not required to develop the record by seeking a physician's function-by-function assessment of the Plaintiff.  *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. Apr. 2, 2013) (affirming District Court's decision that ALJ's determination that disability claimant's RFC did not render her disabled was supported by substantial evidence, which did not include a function-by-function assessment, but included two consultative examinations which were consistent with an extensive medical record and the findings of one of the claimant's treating physicians).  In reaching such conclusion, "a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Commissioner of Social Security*, 676 Fed.Appx. 5, 8 (2d Cir. 2017) (citing *Tankisi*, 521 Fed.Appx. at 34, and

*Pellam v. Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where physician's opinion was rejected but ALJ relied on physician's clinical findings and treatment notes"). In evaluating whether the requisite substantial evidence exists, the court must "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and the Commissioner's findings of fact may be rejected "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted). In the instant case, the medical record is extensive and contains sufficient evidence from which the ALJ was permitted to assess Plaintiff's RFC. *See Tankisi*, 521 Fed.Appx. at 34 (remand not required to further develop the record where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity").

In particular, here, the ALJ did not, contrary to Plaintiff's assertion, base her RFC determination on raw medical data but, instead, considered all the medical evidence pertaining to the relevant period including medical opinions and treatment progress notes, in arriving at the RFC. The ALJ specifically relied on office treatment notes from Lakeshore Primary where Plaintiff received primary medical care, AR at 316-77, from Buffalo Neurosurgery Group with whom Dr. Egnatchik is associated, AR at 388-415, 462, and Dr. Biddle, the pain management specialist who treated Plaintiff in connection with her unresolved back pain, AR at 417-30, as well as the hospital records pertaining to Plaintiff's March 3, 2015 lumbar laminectomy. AR at 285-314. The ALJ determined that during the relevant period, *i.e.*, September 24, 2014, when Plaintiff last worked, and June 30, 2015, Plaintiff's last date insured, Plaintiff complained of back and knee pain,

and limited range of motion for which Plaintiff was treated with pain medication and injections, which offered limited relief, AR at 21-22 (citing AR 317-77, 427), and Plaintiff underwent surgery on March 3, 2015. AR at 21 (citing AR at 284-90). The ALJ particularly noticed Plaintiff's September 24, 2014 examination by P.A. Warner at Lakeshore Primary, when Plaintiff complained of back pain for which P.A. Warner administered an injection. AR at 21 (citing AR at 316-19). It was following this appointment that P.A. Warner provided Plaintiff with a note excusing Plaintiff from working until November 10, 2014 because of back pain. AR at 373. On April 2, 2015, Plaintiff reported to Dr. Egnatchik that her back was improving and she was slowly increasing her activities. AR at 389. Dr. Egnatchik found Plaintiff ambulated with a steady gait with no assistive devices, able to rise on her toes, rock back on her heels, perform partial deep knee bends, had lower extremity strength of 5+/5 in all muscle groups, and her reflexes were intact and symmetrical. AR at 390. Following her surgery, Plaintiff continued to receive pain management from Dr. Biddle who, on April 6, 2015, diagnosed post laminectomy syndrome (lack of pain relief despite recovering well from spinal surgery) in her lumbar region, and lumbar joint arthropathy, and prescribed narcotic pain relievers which Plaintiff reported managed her pain well. AR at 417-18. The ALJ took further notice of Dr. Egnatchik's report of May 15, 201, that on May 12, 2015, Plaintiff fell down some stairs resulting in significant pain in her low back that radiated into her legs, but that a CT scan of Plaintiff's back showed no significant hardware failure or fractures and an MRI showed only some minor trauma that was expected to gradually subside and for which no surgery was recommended. AR at 21-22 (citing AR at 462-63). Physical examination by Dr. Egnatchik on July 7, 2015,

13

showed no focal motor weakness (based on a neurological deficit), Plaintiff walked without assistive devices, and had no sensory changes.  AR at 464.   The ALJ further considered Plaintiff's complaints, made after the date last insured, of left knee pain which Plaintiff attributes to a snowboarding injury at age 16, and which Plaintiff treated with medication.  AR at 22 (citing AR at 433-40 (Southtowns Neurology), and 441-61 (Excelsior Orthopaedics, LLP)).  The ALJ observed that Plaintiff's complaints regarding her left knee were somewhat inconsistent, with Plaintiff failing to follow up with physical therapy prescribed for her left knee, citing her physician's findings that her back problem would not permit her to participate in physical therapy, despite having recently undergone corrective back surgery, AR at 22, and Plaintiff's use of a knee brace and walking with a normal gait.  AR at 441-42.  Accordingly, the record fails to support Plaintiff's argument that the ALJ relied on only raw medical data in determining Plaintiff's RFC.

Nor did the ALJ err in relying on the absence of any treatment records for Plaintiff's mental health complaints as establishing Plaintiff had not more than a "mild" limitation in any of the four functional areas relative to a medically determinable mental impairment.  A thorough review of the administrative record fails to establish that Plaintiff sought or receives any psychiatric treatment; rather, the record with regard to Plaintiff's mental health is limited to references in medical records from Lakeshore Primary that Plaintiff was diagnosed with anxiety for which the anti-anxiety medication Xanax was prescribed, with no indication who made the anxiety diagnosis or when.  *See*, *e.g.*, AR at 318 (noting at September 24, 2014 examination that Plaintiff has been taking Xanax for years to control anxiety).  Accordingly, the ALJ's assessment that

14

Plaintiff's mental impairment poses no more than a mild limitation to her residual mental functional capacity, AR at 19, is supported by substantial evidence in the record.

Nor did the ALJ err in failing to recontact Dr. Egnatchik for clarification of his January 27, 2015 opinion that Plaintiff is "temporarily totally disabled," AR at 377, and his April 2, 2015 opinion that Plaintiff is "100% totally temporarily disabled," AR at 389-90, and to obtain a functional assessment of Plaintiff's functional limitations. In particular, a plain reading of the opinions establish they were rendered in connection with the laminectomy Plaintiff underwent on March 3, 2015 which was successful with regard to the physical replacement of the degenerated L5-S1 disc, with Dr. Egnatchik finding on April 2, 2015, that Plaintiff was "doing quite well," ambulating with a steady gate and without assistive devices, able to rise on toes, rock on heels, perform partial deep knee bends, with intact strength in lower extremities, and reflexes intact and symmetrical. AR at 390. Dr. Egnatchik also expected Plaintiff's physical condition to continue to improve with recent X-rays of Plaintiff's lumbar spine showing "her instrumentation to be intact and incorporating quite nicely." *Id*. Moreover, Dr. Egnatchik's assessment of Plaintiff as being temporarily and totally disabled uses terms applicable to worker's compensation claims as opposed to Social Security disability claims for which the concept of a "partial" disability does not apply, and the determination of a claimant's disability under the Act is reserved for the Commissioner. *See Taylor v. Barnhart*, 83 Fed.Appx. 347, 349 (2d Cir. 2003) (affirming that district court did not err in affording claimant's treating physician's opinion that the claimant was "temporarily totally disabled" no weight "since the ultimate issue of disability is reserved for the Commissioner."). Significantly, the ALJ was not bound by the opinion of Dr.

Egnatchik, nor by a determination on a claimant's workers' compensation claim. *See Thompson v. Commissioner of Social Security*, 2019 WL 4016167, at * 4 (W.D.N.Y. Aug. 26, 2019) (finding ALJ properly discounted opinions rendered in connection with workers' compensation claim "because workers compensation claims are governed by different standards than Social Security disability benefits claims; therefore, an opinion rendered for workers' compensation purposes is not binding on the ALJ.") (citing *Cobbins v. Comm'r of Soc. Sec.*, 32 F.Supp.3d 126, 135 (N.D.N.Y. 2012)).

Accordingly, the record does not support Plaintiff's claim that the ALJ should have recontacted Dr. Egnatchik for clarification given, as discussed above, Discussion, *supra*, at 12-14, that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record.

Moreover, because Plaintiff seeks disability benefits under Title II, she was required to establish disability as of the date last insured, *i.e.*, June 30, 2015, 20 C.F.R. § 404.131(a) ("To establish a period of disability, [the claimant] must have disability insured status in the quarter in which [she] becomes disabled or in a later quarter in which [she is] disabled.") (bracketed material added), and the ALJ appropriately limited her consideration of the record to whether Plaintiff was able to establish disability by that date. AR at 22-23.

The ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record, as is the ALJ's finding that Plaintiff's RFC permits her to perform jobs that exist in the national economy.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 10) is GRANTED. The Clerk of Court directed to close the case.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:　　March 3rd, 2020
　　　　　　Buffalo, New York